| JAMES L. CANNELLA, Judge.
Plaintiff, Genevieve Kennedy, appeals the amount of damages awarded in an automobile accident case against, Defendant, Allstate Insurance Company (Allstate), Plaintiffs uninsured/underinsured motorist insurance (UM) carrier. We affirm.
On May 16, 1998, the 51 year old Plaintiff was struck broadside by a car that ran a stop sign at the intersection of U.S. Highway 90 and Louisiana Highway 48. The car was owned by Clyde Hunter, insured also by Allstate, and driven by She-keita Hunter, when the accident occurred. The Plaintiff subsequently filed suit on March 5,1999 for injuries to her left wrist, shoulder, neck and low back. Plaintiff settled the suit against the Clyde Hunter, Shekeita Hunter, and Allstate for its liability policy limits of $10,000, reserving her rights against Allstate, her UM carrier, which provided for $10,000 in UM coverage.
The matter was tried on November 29, 2000. The liability of Shekeita Hunter was stipulated and the medical evidence was presented through three doctors’ depositions and medical records. The case was held open for taking of a | adoctor’s deposition. On March 19, 2001, the trial judge rendered a judgment in favor of Plaintiff for aggravation of a pre-existing low back condition in the amount of $5,000 for pain and suffering. Plaintiffs claim for penalties and attorneys fees under La. R.S. 22:658 et seq. was denied.
On appeal, Plaintiff asserts that the damages awarded by the trial judge are inadequate to compensate her for her injuries and that the trial judge erred in failing to award automobile property damages, penalties and attorneys fees.
The evidence is uncontested that Plaintiff was treated for a painful wrist injury and a neck strain that lasted two to three weeks following the accident. The contested element of damages is whether her low back pain was caused by the accident, or was a prior condition that was aggravated by the accident, and the amount of pain and suffering.
At the time of trial, Plaintiff had been employed by Magnolia School for 23 years. *948 She has a history of diabetes, high blood pressure, breast lumps and hysterectomy. In 1996, she was in an accident that injured her neck and shoulder. Those ailments resolved within three to four weeks. She has no history of low back pain.
The day after the accident, Plaintiff went to West Jefferson General Hospital complaining of shoulder, wrist and back pain. On May 20, 1998, she was seen by Dr. Isadore Brickman, a general practitioner, who is also a board certified general and thoracic surgeon, for those same complaints. He found that her left hand was weak and swollen and that she had spasms in her back and neck. Because of her continuing back spasms, pain and decreased range of motion, he ordered a Magnetic Resonance Imaging (MRI) test. From the test results, he concluded that she had a herniated disc at L3-4, a bulging disc at L4-5, and degenerative changes 14in her lumbar spine. He noted that there was no evidence of longstanding arthritis in the x-rays. However, he referred her to an orthopedic surgeon for further treatment of the disc abnormalities.
Dr. Brickman treated Plaintiff in June, July, August and September of 1998, during which time her condition improved. He testified that the low back problems can exist without symptoms and that the pain can be triggered by trauma. Dr. Brickman testified that Plaintiffs complaints were either caused by or aggravated by the accident.
On September 16, 1998, Plaintiff was seen by Dr. Andrew Kucharchuk, an orthopedic surgeon. On her initial visit, she exhibited abnormal range of motion, performed the heel and toe walk with difficulty, and experienced pain on palpation. She was treated with exercise, moist heat/ cold packs and electronic stimulation. Plaintiff did not return until March 24, 1999. At that time, Dr. E. Allen Johnson, an orthopedic surgeon in the same medical group, saw her. He states in his notes that “Mrs. Kennedy states that her symptoms have resolved.” The doctor discharged her and released her to return to full activities.
Dr. Ralph Katz, another orthopedic surgeon, testified that he saw Plaintiff for a knee problem in November of 1999, as a referral from her primary physician. She did not complain about her back until August of 2000. However, he noted that she was referred by the Health Management Organization (HMO) primary doctor only for her knee, which would explain why she did not mention her back at that time. However, in August of 2000, her back pain was a primary complaint. She described her back problems as ongoing for a couple of years. Dr. Katz then ordered another MRI and an electromyography (EMG) test, which is a nerve conduction study. It was performed by Dr. Clifford Ameduri, on August 29, |fi2000. The test showed no underlying nerve root involvement in the Plaintiffs back, but showed that she suffers from diabetic neuropathy, or diabetic sciatica, which causes pain and numbness in the lower extremities. This type of pain develops slowly, but does not wax and wane, as do lumbar disc problems. Further, it is not the cause of her low back pain.
Dr. Katz stated that the MRI and the EMG rule out a herniated disc. However, the radiologist that reported on the second MRI stated that the Plaintiff has a bulging disc at L4-5 and a disc protrusion or herniation on the left side of L3-4, as found by Dr. Johnson in the 1998 MRI. Dr. Katz disagreed with the radiologist. He testified that his definition of a herniated disc differs from that of some radiologists. Nevertheless, he agreed that the Plaintiff has degenerative disc disease and joint facet arthrosis, which is the cause of her low back pain.
*949 Dr. Katz agreed that diabetes does not cause disc problems because it is an endocrine disease which affects the blood vessels. He also agreed that a car accident could aggravate a dormant condition in the lumbar spine. He further stated that he could not give an opinion on whether the accident caused the back pain, as he did not see the patient until two years later.
Dr. Daniel Johnson, a diagnostic radiologist, testified that the 1998 MRI report shows a herniated disc at L3^ based on the asymmetric projection of the disc at the left side of the back surface. He also determined that the Plaintiff has a definite bulging disc at L4-5, although it might be herniated because the sides of the back of the disc projects farther back than the protrusion of the middle of the disc, and it is dehydrated. He agreed that these problems are degenerative in nature.
| (Dr. Edward Soli, a retired radiologist, testified that the MRI report indicates degenerative disc disease at the lower three lumbar segments. He testified that, at L3-4, there is an annular bulge and preexisting osteophyte (bone spur) formation. He found loss of signal which comes from lack of water content, or dehydration. Dr. Soil found disc bulges at L4-5 and L5-S1, as well, and an osteophyte, which is consistent with the aging process. While both Dr. Soli and Dr. Johnson agree that there is bulging at L4-5, they disagree about L3-4. Dr. Soil finds a bulging disc, while Dr. Johnson finds a herniated disc. However, Dr. Soil agrees that it is possible for a patient with a herniated disc, osteo-phytes and degenerative disc disease to be asymptomatic and that trauma can aggravate such preexisting conditions, making them symptomatic.
The Plaintiff started treatment for her low back pain right after the accident. She had no prior symptoms related to the low back. She consistently complained about back pain, although she appears to have had a remission in the pain for a period of time, which, according to Dr. Katz, is not unusual with back problems. The Plaintiff has diabetes sciatica, which affects a different part of the leg than lumbar deficiencies. The medical evidence also shows that she has two or three bulging discs and possibly one or two herniated discs. Dr. Brickman, who saw the Plaintiff right after the accident, and observed the patient’s progress, said that her lumbar pain problems are directly related to the accident. Dr. Katz indicated that the pain in her back and the posterior aspect of the leg was consistent with her degenerative disc disease. Dr. Johnson would not speculate on the cause of the Plaintiffs pain because he did not follow the patient clinically.
17Based on the evidence, we find, as did the trial judge, that the accident aggravated a non symptomatic pre-existing condition, causing it to become symptomatic.
The standard for the review of damage awards is whether, after an articulated analysis of the facts, the court finds the trial judge abused her great discretion. Davis v. Louisiana Power and Light, 00-13, 00-14 (La.App. 5th Cir.5/17/00), 762 So.2d 229, 236; Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). This determination is made with consideration to the individual circumstances of the injured plaintiff. Davis, 762 So.2d at 236; Theriot, 625 So.2d at 1340. After an analysis of the facts and circumstances peculiar to the particular case and the particular plaintiff, an appellate court may conclude that the award is inadequate (or excessive). Davis, 762 So.2d at 237; Theriot, 625 So.2d at 1340. Only then does the court resort to prior awards, and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Davis, 762 So.2d at 237; Theriot, 625 So.2d at 1340.
*950 Based on the evidence, we find that the award is not an abuse of discretion. Because of this finding, we further find that the trial judge did not err in denying penalties and attorneys fees to the Plaintiff. Accordingly, the judgment of the trial court is hereby affirmed. Costs of appeal are assessed against Plaintiff.
AFFIRMED.